THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* ARTHUR R. DALLY, Defendant.

Supreme Court, Extraordinary Term, Orange County, January 10, 1941.

*John J. Bennett, Jr., Attorney-General* [*Edward G. O' Neill* and *John F. Tucker, Assistant Attorneys-General,* of counsel], for the plaintiff.

*Wiggins, Faulkner & Arfmann* [*Russell Wiggins* and *Henry G. Arfmann* of counsel], for the defendant.

PERSONIUS, J.   The defendant is charged with violating section 1864 of the Penal Law by consenting to and conniving at the audit and payment of false and fraudulent claims against the county of Orange whereby he wrongfully obtained money of said county.   Each indictment contains many counts.   The various counts allege similar violations on different dates.

The motion is made on the grand jury minutes.   The defendant says the evidence before the grand jury was insufficient to support the indictment, does not show that any crime was committed, or that any false or fraudulent claim within the meaning of said section was presented to the county.

It appears that the defendant was employed by the county superintendent of highways as a foreman or supervisor in the construction of a county highway or highways.   He, individually, owned a number of trucks.   A ruling or suggestion of the TERA gave preference to owner-driven trucks.   To evade this regulation the defendant, in form only, transferred his trucks to his drivers, individually, and had them licensed in their names. · He paid the license fees, authorized the purchase of and paid for the gasoline and oil used, obtained liability insurance and paid the premiums. Periodically, each driver presented a claim to Orange county for the use of the truck registered in his name, including his services.

Each driver cashed his check or had it cashed, retained his compensation of fifty cents per hour and gave the remainder to the defendant; sometimes he gave his check to the defendant who cashed it and paid the claimant. The defendant actually received the county's money for the services of the trucks and paid all the expense of their operation.

The People do not concede that the county received full value in labor and services of the trucks but do not claim that there is any allegation in the indictment or evidence before the grand jury that the trucks were not used during all the time charged in the claims, or that there was any padding or duplication in the claims, either as to the extent of the use or the agreed value thereof. The timekeepers were employed by the county superintendent of highways. They testified that the trucks and drivers worked the full time charged and that all lost time by reason of break-downs, rain, etc., was deducted. The timekeepers certified the payrolls, although they were sometimes also certified by the defendant.

The trucks were hired pursuant to sealed bids submitted by the several drivers individually. That the bids were as low as those of any other bidders is not disputed. On the request of the defendant for trucks on the job, the county superintendent, Mr. Breed, or his assistant, notified the proper bidder to report for work. Both Mr. Breed and his assistant testified that they did not know that the defendant owned the trucks. Trucks of other owners were hired at the same capacity rate.

In short, there was evidence before the grand jury to the effect that the claims were not made by or in the name of the person (defendant) actually entitled to receive payment for the use of the trucks. In this respect the claims were false. Does such falsity bring them within said section 1864? The claims did not state that the claimants owned the trucks but merely that the claimants furnished services by means of the equipment listed. There was no evidence that the labor and services of the trucks, specified in the various claims, were not actually rendered to the county. In fact the evidence was to the contrary.

No authority is called to our attention or found by us holding a claim to be false or fraudulent, except where it was for services *not* rendered or materials *not* furnished. The commonly accepted meaning of " false or fraudulent claim or demand," as used in section 1864, is a claim for services not rendered or for materials not furnished. If so, then a claim which is false only in that it is presented by a person not actually entitled to the proceeds, would not fall within the section. The authorities indicate that to be

" false or fraudulent," a claim must be for services or material not rendered or furnished, either by the claimant or another in privity with claimant.

In *United States* v. *Shapleigh* (54 Fed. 126) the defendant presented vouchers to an army quartermaster. The court said (p. 136). " The evidence was that the defendant signed some of these contracts and vouchers for the accommodation of Capt. Miltimore; that he had no pecuniary interest and derived no pecuniary benefit from them, but that he had paid over to the captain's clerk all the money he collected on the vouchers." Again (p. 128): " The defendant introduced in evidence * * * statements of the services performed that exactly corresponded with those contained in the vouchers." Again (p. 136): " The court charged that ' a fictitious claim against the government * * * may be defined to be a claim preferred against it for services said to have been rendered to it, or for supplies said to have been furnished to the government, *no part of which services or supplies were in fact rendered or supplied.*' " (Italics supplied.) The government contended that this charge was erroneous because the court did not *add*, " by the person making the claim, or by the person in whose favor the account or claims purports to have been made out." *In other words, the government contended (as do the People here) that a claim was fictitious if the services or supplies though actually furnished were not furnished by the claimant or by the person in whose favor the claim purported to have been made out.* Disagreeing with this contention, the appellate court then said (p. 136): " The definitions of ficitious, false, and fraudulent claims given by the court fairly submitted this question to the jury, and there was no error in this portion of the charge." Citing the above case, it is said in *Brunaugh* v. *State* (173 Ind. 483, 496; 90 N. E. 1019, 1025), " the court defined a false claim to be one presented for more work performed or supplies claimed to have been furnished to the government than had been actually performed or furnished." In *State* v. *Farrell* (130 La. 228; 57 So. 898) the indictment charged the defendant with having obtained money without personally having rendered services therefor. The statute provided that a person who permitted his name to be carried on a payroll and received pay for services not rendered was guilty of false pretenses. The court said (p. 229): " There is a difference between receiving salary for services ' not actually rendered,' and receiving pay for services ' not actually performed ' *by the one by whom the salary is collected.* The former is within the intendment of the act; the latter is not." (Italics supplied.) In *State ex rel. Welling* v. *Third Judicial District Court* (87 Utah, 416; 49 P. [2d] 950) the statute provided in sub-

stance that every person who presents for allowance or payment any false or fraudulent claim is guilty of a felony. The court said (p. 419): "The crime * * * is complete when the paper purporting to represent or evidencing the claim * * * is passed * * * to the auditing body with knowledge by the presentor that it was never earned and never could be due."

An essential element in an action for fraud is that the person claiming to have been defrauded has been damaged. (26 C. J. 1167.) The evidence before the grand jury does not show that Orange county was in any way damaged. Indeed, it indicates the contrary.

We do not approve of the scheme adopted by the defendant to circumvent the rule or suggestion of the TERA and to obtain employment for his trucks without the knowledge of the county superintendent. It offers opportunity for favoritism at the expense of the county. The defendant was in effect the county's supervisor and at the same time the county's employee, under his own supervision. In the latter capacity he received a very substantial amount of the county's money. A public officer authorized to contract in his official capacity, who becomes individually interested in such contract, is guilty of a misdemeanor. (Penal Law, § 1868.)

Nevertheless, though the claims were presented by and in the name of a dummy, in the absence of evidence before the grand jury showing that they were for services not rendered or materials not furnished, we are compelled to hold that such evidence does not establish the crime charged in the indictment. Such claims are not false within the meaning or intent of said section 1864. It follows that the indictments must be dismissed.

The defendant also argues that the testimony of the drivers (accomplices) was not sufficiently corroborated. (Code Crim. Proc. § 399.) We think it was. Other evidence tended to connect the defendant with the crime, if any.

Motion granted. Submit order accordingly.