PEOPLE v BROWN

1. CRIMINAL LAW—EVIDENCE—SUFFICIENCY—CIRCUMSTANTIAL EVIDENCE.

Inferences drawn from circumstantial evidence can be sufficient to sustain conviction of a crime.

2. BURGLARY—EVIDENCE—SUFFICIENCY—CIRCUMSTANTIAL EVIDENCE.

Evidence that a house had been broken into and entered at some time during a week, and a stereo unit stolen, and that the stereo unit was later found in defendant's house, and testimony by a prosecution witness that at approximately the same time the defendant had told him that the defendant was going to get himself a record player and TV which defendant had seen in a place he had broken into but which was too heavy so that he needed help and that defendant was going to get it that night, that defendant had then left the witness's house with two men and had returned in approximately two hours telling the witness that he had the record player in the car and that it was a big record player, but that the witness had not gone out to see it, and that defendant had had the witness listen to it on the phone the next day, was sufficient circumstantial evidence to sustain a conviction of breaking and entering with intent to commit larceny even without direct evidence that defendant had committed the crime or that he was at the scene of the crime (MCLA 750.110).

3. CRIMINAL LAW—APPEAL AND ERROR—NEGATION OF INNOCENCE.

In determining whether the prosecution in a criminal case negated all theories consistent with defendant's innocence, an appellate court looks at the record in the light most favorable to the prosecution and determines whether sufficient evidence was adduced which, if believed by the trier of fact, could support a finding of guilty beyond a reasonable doubt, not whether it could support a verdict of innocence.

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence §§ 266, 1091, 1125, 1126.
[2] 29 Am Jur 2d, Evidence § 1126.
[3] 5 Am Jur 2d, Appeal and Error § 5.
[4] 13 Am Jur 2d, Burglary § 52.

4. Burglary—Evidence—Negation of Innocence.

> The trial court, as the trier of fact, had the right to believe witnesses and evidence presented by the prosecution which were sufficient to sustain a conviction of breaking and entering with intent to commit larceny, and to disbelieve defendant's testimony that his wife had bought a stereo unit, stolen from the place broken into, while he was in the hospital, and his own and other testimony tending to support that testimony (MCLA 750.110).

Appeal from Lake, Charles A. Wickens, J. Submitted Division 3 June 13, 1972, at Grand Rapids. (Docket No. 12838.) Decided August 30, 1972.

Floyd Brown was convicted of breaking and entering with intent to commit larceny. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Edward S. Kaplan,* Prosecuting Attorney, for the people.

*Greer, Thomas & Caris,* for defendant on appeal.

Before: Fitzgerald, P. J., and Holbrook and T. M. Burns, JJ.

Holbrook, J. Defendant was convicted by the trial court, sitting without a jury, of breaking and entering with intent to commit larceny in violation of MCLA 750.110; MSA 28.305. He received a sentence of three to ten years in prison.

The only issue raised is whether there was sufficient evidence presented at trial to support the trial court's finding the defendant guilty beyond a reasonable doubt of violating MCLA 750.110; MSA 28.305.

MCLA 750.110; MSA 28.305 states as follows:

"Any person who shall break and enter with intent to commit any felony, or any larceny therein, any tent, hotel, office, store, shop, warehouse, barn, granary, factory or other building, structure, boat or ship, railroad car or any private apartment in any of such buildings or any unoccupied dwelling house, shall be guilty of a felony punishable by imprisonment in the state prison not more than 10 years. Any person who breaks and enters any occupied dwelling house, with intent to commit any felony or larceny therein, shall be guilty of a felony punishable by imprisonment in the state prison for not more than 15 years. For the purpose of this section 'any occupied dwelling house' includes one that does not require the physical presence of an occupant at the time of the breaking and entering but one which is habitually used as a place of abode."

The prosecution's case against the defendant presented at trial is as follows:

Sometime between October 5 and October 13, 1970, the cottage of Jesse and Katherine McFarland, located in Section 13 of Pleasant Plains Township, Lake County, Michigan, was broken into and entered. A Blaupunkt stereo unit with a retail value of $1100 and a Silvertone record player were stolen. Pursuant to a search warrant executed on December 16, 1970, a Blaupunkt stereo unit was found and seized at the residence and in the presence of the defendant. At trial, Mrs. McFarland identified the stereo as being the one taken from her home.

Joseph Moody testified against the defendant. He indicated that he was a resident of the area, that he knew the defendant, and that he had seen the defendant on several occasions between the 8th and 13th of October, 1970. Sometime during the last week in September or the first week in October of 1970, just after the defendant was released from a hospital, the defendant and two

men went to Mr. Moody's house and stayed for approximately 2-1/2 to 3 hours. Mr. Moody testified that at that time, the defendant told him "he was going to get him a record player and a TV" and "he had went in someplace and seen it, and it was too heavy or something and he had to get some help to go get it". Defendant told Mr. Moody that he had broken in and he described the record player as a large one made something like a Magnavox. Defendant said that he knew where the record player was and that he was going to get it that night. The defendant and the two men left Mr. Moody's house at approximately 6 p.m. In approximately two hours, defendant and the two men returned to Mr. Moody's house. The defendant told Mr. Moody that he had the record player in the car and he wanted Mr. Moody to go out to the car and see it. "He said it was a big record player." Mr. Moody did not go out to the car as he was on crutches. The defendant then said that he was going to take the record player home with him. The next day, the defendant called Mr. Moody on the phone and said "This is the box". Mr. Moody testified, "He wanted me to hear it, so I listened".

Upon cross-examination, Mr. Moody testified that he had been convicted of first-degree murder five months prior to the defendant's trial. He admitted that he had decided to testify against the defendant when the latter kicked Mr. Moody's little boy. He indicated that he felt the defendant was living off of the ADC money Mrs. Moody received for the support of Mr. Moody's children. He acknowledged that he had written a letter to his wife from the Lake County Jail in which he stated "I went on the stand against Floyd because you let him misuse my children, and it seems that

you want me put away for life so that you can let him live off my children".

The defendant took the stand on his own behalf and testified that he had left the hospital on either the 6th or 7th of October, 1970. He asserted that he could hardly walk at that time and that he was limping. He denied making the statements attributed to him by Mr. Moody. He stated that his wife had bought the stereo while he was in the hospital for the sum of $65 and that she had a bill of sale for it, signed by a Frank Henry. This bill of sale was presented at trial by the prosecution and the defendant was cross-examined concerning it. Neither the defendant's wife nor Frank Henry testified at the trial. The defendant denied committing the crime with which he was charged.

Mr. Moody's wife testified that she was present during the time that defendant allegedly made the statements concerning the alleged crime to her husband and that she heard no such statements.

The trial court in finding the defendant guilty as charged stated:

"The only question that is before the court, is has the prosecutor proved beyond a reasonable doubt that Floyd Brown, the defendant in this case, committed the crime. Now, it is not a duty of the prosecutor to prove guilt beyond all doubt. It is only to prove guilt beyond doubt, or a doubt founded in reason, a doubt for which you can give a reason for entertaining. Consequently, the court must look at the testimony which shows whether or not Mr. Brown was the person who committed this crime, which has obviously been established. In this case, we have the fact absolutely that the stereo in question, and which was taken from the McFarlands' house, was found in Mr. Brown's house. Though this does not of itself absolutely convict anybody of anything, it is a substantial fact that the court must consider. This case really boils down to the point, who is the court going to believe as far as the witnesses in this case. Because, for

the prosecution to get a conviction in this case, they must prove by the witnesses that Mr. Brown did this beyond a reasonable doubt, and this is the only testimony other than the stereo. The court has listened very intently to the testimony in this case that has been given. And the court in its estimation believes that the truth is being told by the plaintiff's witnesses in this case, and not the witnesses for the defense, and Mr. Brown is convicted of breaking and entering as charged."

Defendant first contends that because there was no showing that the defendant was near the scene of the crime or that defendant committed a breaking and entering of the McFarland residence, there was insufficient evidence to prove beyond a reasonable doubt that he was guilty of the crime of breaking and entering. In support of this contention, he cites *People v McDonald,* 13 Mich App 226 (1968), for the proposition that unexplained possession of recently stolen property unaccompanied by other facts or circumstances indicating guilt will not sustain a conviction of breaking and entering.

Inferences drawn from circumstantial evidence can be sufficient to sustain a conviction. *People v Williams,* 11 Mich App 62 (1968), *aff'd* 383 Mich 118 (1970). While there is no direct evidence showing that the defendant had committed the breaking and entering or that he was at the scene of the crime, there is circumstantial evidence which indicates that he was there. Mr. Moody's testimony concerning the statement that defendant made to him would indicate that the defendant went to the McFarland's residence and broke and entered and stole the stereo unit. Furthermore, Mr. Moody's listening to the stereo on the phone the next day would indicate that the defendant had possession of the stereo. The stereo unit was also found in the possession of the defendant.

The judge as trier of fact, had the opportunity to listen to the witnesses and observe their demeanor. On appeal, we give deference to the judgment of the trier of fact who has this opportunity to observe and evaluate the plethora of subjective and objective factors which together influence his opinion of the credibility of the witnesses. *People v Stewart,* 36 Mich App 93 (1971). The trial court, having heard testimony of all of the witnesses, determined that the prosecution's witnesses were telling the truth. The evidence of possession of the stolen stereo unit and the other facts and circumstances attested to by these witnesses was sufficient to sustain the finding of the trial judge that defendant was guilty beyond a reasonable doubt.

Defendant next contends that because the prosecution failed to contradict the defendant's account of how he obtained possession of the stereo unit, there was insufficient evidence in the record to support a conclusion that negatives every reasonable theory consistent with the defendant's innocence.

In determining whether the prosecution negated all theories consistent with innocence, this Court looks at the record in the light most favorable to the prosecution and determines whether sufficient evidence was adduced which, if believed by the trier of fact, could support a finding of guilty beyond a reasonable doubt, not whether it could support a verdict of innocence. *People v Stewart, supra.*

In viewing the evidence in the light most favorable to the prosecution, we hold that sufficient evidence was adduced which if believed by the trial court could support a finding of guilt beyond a reasonable doubt. The prosecution adduced testimony that about the time that the alleged crime

had taken place, the defendant had stated that he was going to get himself a record player and that he had already gone to the place and had seen it, but it was too heavy to be carried by one person. This record player was described as large, something like a Magnavox. There was testimony that subsequent to the time that defendant made the statement he went to obtain this record player and then brought it over to his residence. The unit found at the defendant's house two months later was identified as the stolen stereo. Drawing proper inferences from this circumstantial evidence, the trial court could have found the defendant guilty beyond a reasonable doubt. *People v Williams, supra.* The trial court had every right to believe the prosecutor's witnesses and to disbelieve the testimony of the defendant, since the credibility and the weight to be given the testimony is for the trier of facts. *People v Hollis Jackson,* 37 Mich App 570 (1972).

The defendant's final contention is that a conviction based upon inferences drawn from other inferences is impermissible. It is his position that his guilt was inferred from uncertain and speculative evidence, and that therefore his guilt was not established beyond a reasonable doubt.

Inferences drawn from circumstantial evidence can be sufficient to sustain a conviction. *People v Williams, supra.* The question is whether the total evidence, including reasonable inferences, when put together, is sufficient to warrant the trier of fact to conclude that the defendant is guilty beyond a reasonable doubt. *People v Horowitz,* 37 Mich App 151 (1971).

A review of the entire record indicates that the total evidence adduced was not uncertain and speculative so as to prevent reasonable inferences

being drawn from them. This evidence, including reasonable inferences drawn therefrom, when put together was sufficient to warrant the trial court to conclude that the defendant was guilty beyond a reasonable doubt.

Affirmed.

All concurred.