PEOPLE v BARRY

1. Criminal Law—Statutes—Construction.

 The Court of Appeals, when interpreting a criminal statute, must accept the clear wording of the statute and cannot construe it so as to omit portions of the wording.

2. Criminal Law—Statutes—Construction—County Drain Commissioners.

 A statute which makes it a criminal offense for a county drain commissioner to receive money grants, kickbacks, or a share in the profits of a contractor or supplier to the drainage district does not clearly encompass as "interest in the profits" within the meaning of the statute benefits resulting to a commissioner where a contractor hauls fill material from an excavation site to a dumping site owned by the drain commissioner, allegedly at an increased cost to the contractor (MCLA 280.601).

3. Criminal Law—Officers—County Drain Commissioner—Interest in Contract—Statutes—Reasonable Doubt.

 The conviction of a county drain commissioner of having an interest in the profits of a contract to be performed for the drainage district by receiving excavated fill material on his land in alleged violation of a statute, must be set aside where the record when read as a whole does not support, beyond a reasonable doubt, the conclusion that either the added transportation costs to the contractor for hauling the material to the site when closer sites were available, or the fill material itself, constituted an interest in the profits of the contract within the meaning of the statute (MCLA 280.601).

4. Constitutional Law—Statutes—County Drain Commissioner—Rational Basis—Equal Protection.

 A statutory provision which prohibits a county drain commissioner who has been convicted of having an interest in the profits of a contract with the drainage district from again holding the office of county drain commissioner is constitutional; states have the power to enact laws which affect some

Reference for Points in Headnotes
[1–4] 73 Am Jur 2d, Statutes § 254.

groups of citizens differently from others if the classification is reasonable and, therefore, the fact that not all officeholders who violate a statute are similarly treated or that private citizens are not included within the provisions is not a ground for declaring the law unconstitutional.

Appeal from Oakland, William R. Beasley, J. Submitted Division 2 January 11, 1974, at Lansing. (Docket Nos. 14578, 15930, 15931.) Decided June 24, 1974. Leave to appeal denied, 392 Mich —.

Daniel W. Barry was convicted in the district court of a violation of the Drain Code. Defendant appealed to the circuit court which affirmed the conviction and modified sentence. Both parties appeal by leave granted. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, and *Robert C. Williams,* Appellate Counsel, for the people.

*Denison, Devine, Porter & Bartush,* for defendant.

Before: Quinn, P. J., and Danhof and Allen, JJ.

Allen, J. On July 8, 1971, defendant was indicted by an Oakland County citizens' grand jury and charged with a violation of § 601 of the Drain Code of 1956 as amended, MCLA 280.601; MSA 11.1601. The statute provides:

"If any commissioner is interested directly or indirectly in the profits of any contract, job, work or services, other than official services, to be performed for the drainage district, he is deemed to be guilty of a misdemeanor, and the office of such commissioner shall be deemed vacant and the commissioner so convicted

shall be incapable of again holding the office of county drain commissioner."

On December 10, 1971, defendant was found guilty without a jury in the District Court of the City of Pontiac, was sentenced to 90 days in jail and $100 fine, and filed claim of appeal to the Oakland County Circuit Court. On June 12, 1972, the Oakland County Circuit Court affirmed defendant's conviction but modified the sentence to provide that defendant either serve 90 days in jail or pay a fine of $100. The circuit court also determined that the portion of § 601 which precludes a convicted drain commissioner from holding office was a denial of equal protection of the law. Both parties appeal.

Defendant raises eight grounds for reversal, six of which concern the propriety of the grand jury proceedings.[1] We find it necessary to determine only one issue, *viz.,* does the record show beyond a reasonable doubt that the difference in transportation costs between the M-59 property and the other available dump sites constituted an "interest in the profits" as that term is defined in § 601 of the Drain Code. The trial court made the following specific findings of fact.

Number 1: Defendant, Daniel W. Barry, was the Oakland County Drain Commissioner during the period July 21, 1969 to October 13, 1969.

Number 2: There was a drainage project being completed in the City of Pontiac, the Brewer Drain, during the period July 21, 1969 to October 13, 1969.

Number 3: The Brewer Drain Project was being

---

[1] *See People v Blachura,* 390 Mich 326; 212 NW2d 182 (1973), which contains some of the same challenges to the grand jury procedure as in the instant case. Defendant Blachura held a 40% interest in the identical M-59 property as is involved here. The Supreme Court held plaintiff's appeal was properly taken to the Court of Appeals. The case is now pending before this Court, Docket No. 13627.

performed as a result of a contract between the Oakland County Drain Commission and the Weissman Contracting Company.

Number 4: The Brewer Drain was paid for by public funds.

Number 5: The defendant, Mr. Barry, had an interest in some land located at Cass-Elizabeth Lake Road and M-59 in Waterford Township during the period July 21, 1969 to October 13, 1969.

Number 6: That the defendant, Mr. Barry, requested, received and accepted fill dirt from the Brewer Drain.

Number 7: That there were available fill dirt dumping sites adjacent to the Brewer Drain project.

Number 8: That the cost of transporting the fill dirt to the defendant's property was borne by the contractor, Weissman Contracting Company.

Number 9: That the cost of transporting the fill dirt to the defendant's property in Waterford Township was more than the cost of transporting the fill dirt to the adjacent fill dirt dumping sites.

Number 10: That the difference in transportation cost was an interest in the profits of the contract between the Drainage District and the Weissman Contracting Company.

The conclusion of law based upon these facts is that the defendant has violated the provisions of MCLA 280.601 as charged in the indictment.

On appeal, the circuit court disagreed with the trial court's finding of fact number 10, and made its own finding that the fill material itself was a profit in the contract.[2]

---

[2] "In his findings the District Judge concluded that the *difference* in transportation costs between the cost of transporting to the M-59 site and the cost of transporting to the nearest available adjacent site was 'an interest in the profits' of the drainage contract. (Transcript, p 518)

"This Court does not agree that the difference in costs was an interest in the profits. On the other hand, since on oral argument both defense counsel and the prosecutor agree that the drain contractor was entitled to the fill dirt, broken blacktop and other debris, and since it was delivered to a site in which defendant had an interest for the obvious advantage of defendant and his associate, this Court is not inclined to say it was 'clearly erroneous' to conclude defendant

Section 601, enacted June 28, 1965 by 1965 PA 98 (effective March 31, 1966), replaced the former § 601 which restricted a drain commissioner's role in securing signatures on a petition for a new drain.[3]

If the statute had omitted the words "in the profits" this Court would not hesitate to affirm. There is no question but that defendant benefited. The property which he jointly held together with Leon Blachura and James R. Nichols was substantially improved without cost to the owners. Such conduct is clearly unethical and made a punishable offense under the Code of Ethics for State Employees.[4]

It would be a violation under the laws of other states whose statutes make it an offense for a government employee or elected official "to be interested directly or indirectly in any contract".[5]

was interested in the profits of the contract." Opinion of the Circuit Court for Oakland County, June 12, 1972.

[3] "In case any commissioner shall directly or indirectly interest himself in securing signatures to a petition for any drain, he shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not to exceed $50.00 or by imprisonment in the county jail for not to exceed 90 days, or by both such fine and imprisonment in the discretion of the court, and the office of such commissioner shall be deemed vacant and the commissioner so convicted shall be incapable of again holding the office of county drain commissioner; Provided, however, The commissioner may secure signatures to a petition for any drain where land owned in fee simple by said commissioner is liable to special assessment for benefits by reason of such proposed drain."

[4] 1973 PA 196, MCLA 15.341–348; MSA 4.1700(71)–(78), prescribing standards of conduct for the classified and unclassified positions in the executive branch of state government. Sec. 2(4) provides such personnel "shall not, directly or indirectly, solicit or accept any gift or loan of money, goods, services, or other thing of value."

[5] Arizona, ARS § 38-446 ("[C]ounty * * * officers shall not be interested directly or indirectly in any contract * * * made by them in their official capacity"). *State v Bohannan,* 101 Ariz 520, 521; 421 P2d 877, 878 (1966).

California, Government Code, § 1090 ("[C]ounty * * * officers shall not be interested in any contract made by them in their official capacity"). *People v Deysher,* 2 Cal 2d 141; 40 P2d 259 (1934); *People v Elliott,* 115 Cal App 2d 410, 414; 252 P2d 661 (1953).

Unfortunately, this Court cannot construe the statute so as to omit the words "in the profits". The general rule, according to 2A Sutherland, Statutory Construction (4th ed), § 46.06, p 63, is:

"A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error."

It is well established that:

"It is the duty of the court to give effect, if possible, to every clause and word of a statute, avoiding, if it may be, any construction which implies that the legislature was ignorant of the meaning of the language it employed." *Inhabitants of Montclair v Ramsdell,* 107 US 147, 152; 2 S Ct 391, 395; 27 L Ed 431, 433 (1883).

"All parts of the specific provision to be construed must be given force and effect. This means that no phrase, or clause, or word, may be ignored in determining the construction of such provision." *Melia v Employment Security Commission,* 346 Mich 544, 562; 78 NW2d 273 (1956).

In our opinion the Legislature clearly expressed its intent to make it an offense to receive a money grant or kickback or share in the profit of the contractor or supplier. Clearly, the phrase was expressly used to prohibit a drain commissioner receiving stock or having an interest in the company or business concern supplying the tile or performing the excavation. None of these obviously prohibited acts are involved in the instant

Illinois, Drainage Code, § 6-3, Smith-Hurd Annotated Statutes ("No commissioner shall be interested, directly or indirectly, in any contract").

New York, Penal Law, § 1868 ("Who becomes voluntarily interested in such contract"). *People v Dally,* 175 Misc 680, 684; 24 NYS2d 692, 696 (1941).

case. The question therefore is whether either the added transportation costs resulting from the delivery of fill material to the M-59 project as found by the district court, or the fill material itself as found by the circuit court, are an "interest in the profits" within the meaning of the statute. We cannot answer this question with the judicial certainty required in a criminal procedure.

Legislative records are extinct. We do know that when interpreting a criminal statute we must accept its clear wording. *People v Jack Dykstra Ford Inc,* 52 Mich App 337; 217 NW2d 99 (1974). The clear wording covers the kickback-type or hidden partnership situation rather than an increase in the cost of hauling excavation.

However, assuming *arguendo* that the statute is broad enough to apply to the situation in the present case, it still is necessary that the offense charged be proved beyond a reasonable doubt.

"The question is whether the total evidence, including reasonable inferences, when put together, is sufficient to warrant the trier of fact to conclude that the defendant is guilty beyond a reasonable doubt." *People v Brown,* 42 Mich App 608, 615; 202 NW2d 493 (1972)

"It is a fundamental principle of our system of justice that an accused's guilt must be proved beyond a reasonable doubt to sustain a conviction." *People v Hubbard,* 387 Mich 294, 299; 196 NW2d 768 (1972).

Application of these principles leads this Court to conclude that the evidence is insufficient to support the district court's findings #9 and #10. The leitmotif of the prosecution's case was that the cost of transporting fill material to the M-59 property affected the profits of the Brewer Drain project contractor. Even the circuit court concluded that this theory had not been proved, and substituted therefor an independent finding of fact that

the excavated concrete and dirt was itself a profit to the contractor. We reject this substitute theory. It is contrary to a record replete with evidence that the fill material was a $40,000 to $45,000 liability rather than an asset. Weissman Contracting Company was required to spend money to haul the material away and did not consider it anything of value. Even if the substituted theory were record-supported, it would not be grounds for affirmance.

"It is not the function of an appellate court to decide disputed questions of fact in the first instance and then choose between affirmance or reversal by testing its factual conclusion against that which the trial court *might* have or, if the trial judge's reasoning at the time of judgment were identical with that of the appellate court at the time of review, *must* have reached for it to issue the judgment it did. (Emphasis in original.) *Nicpon v Nicpon,* 9 Mich App 373, 378; 157 NW2d 464 (1968).

"The decisions are plentiful that an appellate court cannot affirm a conviction erroneously secured on one theory, on the speculation that conviction would have followed if the correct theory had been applied. *Pearson v United States,* 192 F2d 681 (CA 6, 1951); *People v Bigley,* 178 Misc 552; 35 NYS2d 130 (1942); *People v Roper,* 259 NY 170; 181 NE 88 (1932); *People v Hewlett,* 108 Cal App 2d 358, 373; 239 P2d 150, 159 (1951); 24 CJS, Criminal Law, § 1834, p 676." *Wilson v United States,* 250 F2d 312, 325 (CA 9, 1957).

The district court's findings #1 through #8 are adequately supported by the record. Findings #9 and #10—the heart of the prosecution's case—are, at best, inconclusive. True, the record discloses that there were three dump sites, each closer to the Brewer Drain project than the M-59 site; that these sites were about a 10-minute trucking run from the drain project as compared with a 40-

minute to 1-hour run to the M-59 property; that time tickets signed by truck drivers hauling to the M-59 site, multiplied by the hourly trucking rate of $16.50—some $1,881—would cover the cost to truck fill material to defendant's property; that John Rivard, job superintendent for Weissman Contracting Company, and the most effective witness for the prosecution, testified the longer trip affected production and increased the contractor's costs; that Murray Rasmussen, a drain inspector for Oakland County, stated that in his opinion it cost more to haul to the M-59 site.

The probative value of Rivard's testimony was substantially diluted by his other statements. On cross-examination, he said that most of the fill material delivered to the M-59 property was torn up concrete and asphalt which could not be disposed of at the three closer dumps. He explained that the Hawkins property was "filled up" and that there was not sufficient dirt to cover the concrete if it had been trucked to Tom's Market or Hawkins dumps; that the concrete could easily be disposed of at the M-59 site because it would sink. Rivard's testimony on this point was substantiated by the owner of the Hawkins dump who conceded he received "all the fill he could stand". The executor of the estate of the deceased owner of Tom's Market admitted that concrete dumping on his site would have required burial. Rivard's testimony is further weakened by his explanation that often the trucks dispatched for dumping on defendant's property were on their way to pick up sand at a sand quarry located beyond the M-59 site and therefore the Weissman Contracting Company suffered no additional expense by delivering the fill to the more distant site. On redirect examination he stated Weissman instructed him to haul to

the M-59 site if it could be done "in any way without jeopardizing the job". He explained "jeopardizing the job" as meaning work interruptions by pipe-laying crews waiting for trucks. He explained there were times the crews did wait for trucks "but it wasn't directly pertaining to sending a truck to 59". Asked whether Weissman lost money by placing material where he did, as distinguished from dumping at a closer site, he replied "No—I would say no he didn't".

Seymour Weissman, president of the Weissman Contracting Company and a witness for the people, testified that the bulk of the Brewer Drain excavation was dumped close to the job but some excavation was trucked out to the M-59 location. Asked on cross-examination whether this dumping increased his costs, he responded "I don't think it affected my profits one way or the other". He explained he preferred to have a back-up alternate dump site with additional trucks and that this was not a significant cost item. A truck driver testified Weissman paid $16.50 an hour for truck and driver but no extra money was paid to drivers for delivery to the M-59 site.

In summary, we conclude that isolated statements support plaintiff's theory but when the record is read as a whole, together with the explanation of the witnesses' isolated statements, it is insufficient to sustain the conclusion that defendant is guilty beyond a reasonable doubt. Obviously, longer truck hauls increased transportation costs but did not ipso facto decrease the contractor's profit. The record is clear that savings on short hauls in turn required higher costs for covering the dumped debris. Of the available dumping sites, the M-59 location was most suited and convenient for dumping concrete and gravel. Many of the long

hauls were made as part of a run to a sand quarry located beyond but on the road to the M-59 site. Read in its entirety, witness Rivard's testimony is particularly contradictory.

Our conclusion is not a criticism of the prosecution's handling of the case. On the contrary, the action was capably presented and unusually well tried. The fault lies in the statute which defines the offense. Plaintiff was handicapped by attempting to shoehorn an obviously unethical act into an awkwardly worded statute. The remedy lies with the Legislature to whom we respectfully suggest an amendment of § 601. Any amendatory language should make the gravamen of the offense the personal enrichment or gain of the public official rather than the effect on the contractor's profit.

We turn to plaintiff's appeal of certain portions of the opinion of the circuit court. Plaintiff first asks this Court to reinstate defendant's original sentence of 90 days in jail *and* $100 fine. In view of our conclusion above it is unnecessary to determine this issue. Plaintiff further asks that this Court reverse the circuit court's determination that the following part of § 601 of the Drain Code is unconstitutional:

"[A]nd the commissioner so convicted shall be incapable of again holding the office of county drain commissioner."

Pursuant to this ruling, defendant proceeded to run for reelection as county drain commissioner. Although defendant was defeated in the election, the issue is not moot and could be raised again in situations where a drain commissioner's misconduct clearly falls within the statute.

The trial court reasoned that the provision denied defendant equal protection of the laws be-

cause persons convicted of other misdemeanors such as drunk driving or even of a felony would be eligible to run for the office, whereas defendant, also convicted of a misdemeanor, would not be eligible. Statutory provisions disqualifying a public officer, convicted of a breach of trust of his office, from holding any public office are common and have been upheld by the courts. 63 Am Jur 2d, Public Officers and Employees, § 58, pp 664-665. The fact that not all officeholders who violate a statute are similarly treated or that private citizens are not included within the provisions is not a ground for declaring the law unconstitutional. In *Gray v McLendon,* 134 Ga 224; 67 SE 859 (1910), the governor removed from office the state railroad commissioner who claimed the law under which the governor acted violated the equal protection clause because other state officers were not subject to like removal. The Court rejected the contention, saying:

"The fourteenth amendment does not prohibit legislation limited as to objects or territory, but merely that all persons subjected to it shall be treated alike under like circumstances and conditions. * * * . The act creating the office provided terms upon which it could be held. In this act the right of removal was preserved to the legislature, and one accepting the office did so subject to this reserved power in the body creating the office, and cannot be heard to say that he is denied the equal protection of the laws because he is not accorded the same privileges as to proceedings where his removal is attempted as are those holding offices of a different class in the state. The law operates equally upon all the commissioners accepting office under the act." 134 Ga 224, 243; 67 SE 859, 868 (1910).

States have the power to enact laws which affect some groups of citizens differently from others if the classification is reasonable. *Kriger v South*

*Oakland County Mutual Aid Pact,* 49 Mich App 7, 11; 211 NW2d 228 (1973). The statute needs only a rational basis to be sustained and the litigant attacking the statute must carry the burden of showing it does not rest upon a rational basis. *Governor v State Treasurer,* 389 Mich 1, 25; 203 NW2d 457 (1972); *Freissler v State Highway Commission,* 53 Mich App 530; 220 NW2d 141 (1974). The office of County Drain Commissioner is especially susceptible to conflicts of interest and it is entirely rational for the Legislature to require the additional sanction that upon violation of the Drain Code the officer would be ineligible to hold the office of Drain Commissioner again. The circuit court's determination of unconstitutionality is reversed.

Reversed and defendant's conviction set aside and defendant ordered released.

All concurred.